Date signed August 04, 2008



_____

PAUL MANNES
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | |
|---|---|
| In Re:<br>National Energy & Gas Transmission,<br>Inc. (f/k/a PG&E National Energy<br>Group, Inc.), *et al.*,<br><br><br>Debtors. | Case Nos.: 03-30459PM and 03-30461PM<br>through 03-30464PM and 03-30686PM<br>through 03-30687PM<br><br>Chapter 11<br>(Jt. Admin. Lead Case No. 03-30459PM) |
| NEGT Energy Trading Holdings<br>Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>Orrick, Herrington & Sutcliffe LLP,<br><br>        Defendant. | AP No. 05-09048PM |

Memorandum of Decision

This is an action commenced by NEGT Energy Trading Holdings Corporation ("the Plaintiff" or "ET Holdings") against Orrick, Herrington & Sutcliffe LLP ("the Defendant" or "Orrick") under 11 U.S.C. §§ 547, 548 and 550, the attacked transfers were payments for attorney's fees made within 90 days of the filing of ET Holdings' bankruptcy petition.

Before the court are competing motions for summary judgment – the Plaintiff seeking partial relief.[1]  Argument was heard by the court on July 24, 2008.  As suggested immediately following the hearing and being cognizant of the fact that the issues presented herein will be revisited by another court, the court will act expeditiously and grant Orrick's motion for summary judgment as there exists no material factual dispute.

Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, renders summary judgment appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  At this stage, it is the court's function to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The court finds that there is not.

The undisputed facts are that Orrick was paid $678,839.15 by Power Services Company ("Power Services"), a non-debtor subsidiary of National Energy & Gas Transmission, Inc. ("NEGT"), a debtor in this court owned by PG&E Corporation,

---

[1]  Plaintiff's Motion for Partial Summary Judgment (D.E. # 73); Brief Supplement to Plaintiff's Motion for Partial Summary Judgment (D.E. #78); Corrected Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (D.E. #80); Second Supplement to Plaintiff's Motion for Partial Summary Judgment Requesting Summary Judgment on the Issue of Insolvency (D.E. #83); Memorandum of Law in Support of Defendant Orrick, Herrington & Sutcliffe LLP's Motion for Summary Judgment (D.E. #85); Plaintiff's Collective (I) Reply to Orrick, Herrington & Sutcliffe LLP's Corrected Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and (II) Opposition to Memorandum of Law in Support of Defendant Orrick, Herrington & Sutcliffe LLP's Motion for Summary Judgment (D.E. #90); Memorandum of Law in Opposition to the Second Supplement to Plaintiff's Motion for Partial Summary Judgment Requesting Summary Judgment on the Issue of Insolvency (D.E. #91); Reply Memorandum of Law in Further Support of Defendant Orrick, Herrington & Sutcliffe LLP's Motion for Summary Judgment (D.E. #92); Plaintiff's Reply to Memorandum of Law in Opposition to the Second Supplement to Plaintiff's Motion for Partial Summary Judgment Requesting Summary Judgment on the Issue of Insolvency (D.E. #94).

within 90 days of July 8, 2003, the date ET Holdings, NEGT and other related debtors filed bankruptcy petitions.[2]

PG&E Corporation retained Orrick with respect to the three matters at issue herein.[3] Orrick submitted to PG&E Corporation ten invoices for the legal services rendered. PG&E Corporation forwarded those invoices to ET Holdings, which were approved for payment. Power Services transmitted funds to Orrick accordingly. It later sought "reimbursement" from ET Power, ET Holdings ultimately and allegedly distributing the funds to Power Services in satisfaction of the "outlay."

It is what happened between the various NEGT-related entities after Orrick was paid by Power Services that clouds the waters. Murkiness, however, does not amount to a material factual dispute. Rather, the court views ET Holdings as playing fast and loose with its characterization of the facts in an advantageous, yet disingenuous, light.

Power Services submitted statements to ET Power for payments it made to Orrick as well as to others. Regardless of the terminology used by ET Holdings, the court finds as a fact that Power Services billed ET Power.[4] ET Holdings, following Power Services' billing, paid Power Services. There is insufficient evidence to support that all of the Orrick invoices were actually billed by Power Services and later paid by ET Holdings. Power Services' bills to ET Power specifically referenced Orrick's invoices totaling $336,677.06 (eight of the ten invoices issued by Orrick to

---

[2] ET Holdings is a holding company of NEGT. ET Holdings was the general partner of NEGT Energy Trading Power, L.P. ("ET Power"). Power Services is another entity within the NEGT corporate family.

[3] Orrick described its relationship with PG&E Corporation spanning nearly 100 years.

[4] This billing arrangement is made clear by review of the documents issued by Power Services. ET Power is designated a "customer" and there are references to invoice numbers and invoice project names thereon. The title of the bill is "PG&E National Energy Group Detail Billing Supporting Schedule for ODC's." *See* D.E. # 85, Cutler Affidavit, Ex. 13. Further, in support of the finding that Power Services billed for its services, the court references the Plaintiff's bankruptcy Schedules filed in Case No. 03-30463PM, wherein, on Schedule F, Power Services is listed as holding an unsecured nonpriority claim designated both contingent and disputed totaling $3,119,175.20.

PG&E Corporation).  ET Holdings urges that, although not specifically referenced, a Power Services' invoice dated July 2, 2003, identifying a lump sum due for "Third-Party" charges necessarily included the remaining invoiced balance paid to Orrick of $342,162.09.  Again, the evidence does not support ET Holdings' conclusion and, as addressed below, ET Holdings' speculation is immaterial to this court's decision.

The Amended Complaint included two counts, one under 11 U.S.C. § 547[5] and the other under § 548,[6] both counts demanding turnover under 11 U.S.C. § 550.

---

[5]  11 U.S.C. § 547(b) provides:

(b) [T]he trustee may avoid any transfer of an interest of the debtor in property—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

      (A) on or within 90 days before the date of the filing of the petition; or

      (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

   (5) that enables such creditor to receive more than such creditor would receive if—

      (A) the case were a case under chapter 7 of this title;

      (B) the transfer had not been made; and

      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

[6]  11 U.S.C. § 548(a) provides:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

      (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

Sections 547 and 548 of the Bankruptcy Code require that the complained of transfer involve an interest of the debtor in property.[7]  The determinative issue in this proceeding is whether Orrick received funds that ET Holdings had an interest in. The court finds that it did not.

This record, as well as the bankruptcy case records of NEGT and ET Holdings, make it abundantly clear that Power Services provided a bill paying service to the NEGT-entities and was nothing more than a intercompany creditor performing its designated responsibilities.  A motion seeking authorization for the continued use of the cash management system in place supports this conclusion.  ET Holdings described "intercompany transactions" and stated: "[P]ower Services, a non-debtor operating Affiliate, incurs obligations to third parties, . . . , on behalf of various Company entities, and then invoices the appropriate Company entities accordingly." Case No. 03-30459, D.E. #6, ¶ 28.  Power Services was obliged to make payments for the family.  It then separately billed for the payments made plus an additional

---

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

　　(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

　　(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

　　(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[7]  11 U.S.C. § 541 provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

　　(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

"handling charge."  That ET Holdings was indebted to Power Services as a result is reflected on ET Holdings' Schedules F and G wherein ET Holdings disclosed that Power Services held an unsecured nonpriority claim totaling  $3,119,175.20 (designated contingent and disputed), for "G&A Charges" in connection with a "Technical Services Agreement."  Case No. 03-30463, D.E. #13, Schedules F and G. Power Services is listed as a creditor on ET Holdings' Schedule B, said to owe to ET Holdings accounts receivable of approximately $6.8 million.  This debtor/creditor relationship was again addressed when ET Holdings and Power Services moved for approval of a settlement agreement.  Case No. 03-30459, D.E.# 1997.  By agreement, each released the other from any and all claims.  The agreement was endorsed by this court.[8]

The record also reflects that ET Holdings did not view the payments made to Orrick by Power Services as originating from its estate and that those transfers did not dissipate ET Holdings' estate.  ET Holdings listed ownership of several bank accounts on Schedule B – none of which showing that ET Holdings had any control or interest in Power Services' account(s).  ET Holdings' answer to question 10 (Other transfers) on the Statement of Financial Affairs reflected no transfers of property were made within the year prior to the filing of the case.  There were no amendments to the Schedules or the Statement of Financial Affairs filed.   ET Holdings successfully showed that payments in satisfaction of the debt owed to Power Services diminished its estate but any claim ET Holdings may have had against Power Services was waived by the court-approved settlement agreement.

Having waived its right to pursue its sibling for the funds, ET Holdings launched this action against Orrick concocting a very different scenario than that

---

[8]  ET Holdings, as well as other debtors, moved this court for the approval of settlement agreements.  One of the agreements was between ET Holdings and other debtors and Power Services. The agreement included the mutual release of any and all claims that the parties may have had against one another.  Case No. 03-30459, D.E. # 1997, Ex. B, Settlement Agreement and Mutual Release, Section 2.1.  The motion was approved by this court.  Case No. 03-30459, D.E. # 2152.

reflected in these records.  Sections 547 and 548 of the Bankruptcy Code are inapplicable and dismissal of the Amended Complaint is warranted.

The Defendant shall submit a proposed order on notice.


Copies to:

Plaintiff
Defendant
Plaintiff's Counsel
Defendant's Counsel


**End of Memorandum of Decision**