Date signed March 27, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In Re:<br>**National Energy & Gas Transmission, Inc. (f/k/a PG&E National Energy Group, Inc.), *et al.*,**<br><br><br>Debtors. | Case Nos.: 03-30459PM and 03-30461PM through 03-30464PM and 03-30686PM through 03-30687PM<br><br>Chapter 11<br>(Jt. Admin. Lead Case No. 03-30459PM) |
| **NEGT Energy Trading Holdings Corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**Orrick, Herrington & Sutcliffe LLP,**<br><br>Defendant. | AP No. 05-09048PM |

### MEMORANDUM OF DECISION

Having prevailed upon the merits of this adversary proceeding, Orrick, Herrington & Sutcliffe LLP ("the Defendant" or "Orrick") seeks the imposition of sanctions against NEGT Energy Trading Holdings Corporation ("the Plaintiff" or "ET Holdings") and its counsel, Whiteford, Taylor & Preston LLP ("Whiteford"), pursuant to F.R.B.P. 9011(c), 28 U.S.C. § 1927 and the inherent powers of this court ("the Sanctions Motion"). Such sanctions may be imposed by the Bankruptcy Court, whether acting as a unit of the District Court (*see In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102-104 (CA3 2008)), or acting pursuant to its inherent power to sanction parties in appropriate circumstances. *See In re Rainbow Magazine, Inc.*, 77 F.3d 278,

284 (CA9 1996); *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1086 (CA10 1994).  Testimony was taken on August 26 and 27, 2008.  The parties submitted post-trial memoranda and the court heard final argument on the Sanctions Motion on December 10, 2008.

This adversary proceeding was commenced on October 31, 2005, under 11 U.S.C. §§ 547 and 550.  The attacked transfers were payments for attorney's fees made within 90 days of the filing of ET Holdings' bankruptcy petition.  The Plaintiff's action was based on the allegation that Orrick received $678,839.15 of ET Holdings' property within 90 days of July 8, 2003, the date ET Holdings, National Energy & Gas Transmission, Inc. ("NEGT") and other related debtors filed bankruptcy petitions.[1]  The Plaintiff's complaint, much like thousands of similar cases filed in this court, merely stated that Orrick received an aggregate amount of ET Holdings' property ($678,839.15) within the 90 days prior to the filing of the petition and that Orrick was a creditor of ET Holdings at the time of the transfers.  The amended complaint, filed on August 3, 2007, added a count alleging fraudulent transfers under 11 U.S.C. § 548(a).  After consideration of competing motions for summary judgment, the court issued a Memorandum of Decision granting Orrick's motion on August 5, 2008, and on August 12, 2008, entered an Order implementing the Decision.  The undisputed facts, obtained primarily from testimony of persons connected with ET Holdings or its affiliates, showed that Orrick had been employed by and was a creditor of the parent company, PG&E Corporation.  In reality, Orrick was paid by Power Services Company ("Power Services"), a non-debtor subsidiary of NEGT.  In finding that PG&E Corporation retained Orrick with respect to the representation at issue – not ET Holdings – the court concluded that Power Services merely provided a bill paying service to the NEGT-entities.  ET Holdings' motion for reconsideration was denied on November 24, 2008, followed by the filing of a Notice of Appeal on December 3, 2008.  That appeal remains pending before the United States District Court for the District of Maryland.

As Orrick argued, this court had previously entered an order in the jointly-administered bankruptcy cases approving a sale that included a mutual release whereby ET Holdings released any preference claims against Power Services.  At about this time, the barrenness of a classic

---

[1]  ET Holdings is a holding company of NEGT.  ET Holdings was the general partner of NEGT Energy Trading Power, L.P. ("ET Power").  Power Services is another entity within the NEGT corporate family.

preference action could no longer be ignored.  So, ET Holdings and Whiteford seized upon a brand new theory for recovery based upon the reasoning of two cases – *Smyth v. Kaufman,* 114 F.2d 40 (CA2 1940), and *In re Schick*, 234 B.R. 337 (B.C. S.D.N.Y. 1999).  The argument first appeared in a pleading filed July 14, 2008.  No amendment was made to the pleadings to accomplish this change in direction.

Further exploration into these cases is warranted in assessing whether the Plaintiff and Whiteford's conduct is sanctionable.  This new attack asserted, contrary to the undisputed facts in the record, that Power Services paid Orrick at the designation of ET Holdings, allegedly making an unconditional loan to ET Holdings.  While there can be no dispute with the proposition that if an unconditional loan is made to a debtor, the loan proceeds become the debtor's sole and exclusive property, the uncontradicted fact was that ET Holdings never had legal dominion and control over the funds.  *See In re Southeast Hotel Properties Ltd. P'ship*, 99 F.3d 151, 154-156 (CA4 1996).[2]  As stated in the case of *Virginia Nat'l Bank v. Woodson*, 329 F.2d 836, 839 (CA4 1964), *citing Smyth*, a successful preference action is founded on a finding of the diminution of the estate by the transfer.  The Plaintiff agreed with this statement of the issue on the preference claim by stating:  "[t]he fundamental inquiry is whether the transfer diminished or depleted the debtor's estate" and cited to *In re Ogden*, 314 F.3d 1190, 1198 (CA10 2002).  *See* Dkt. No. 90, p. 20.  What Plaintiff skated by was the fact that what depleted the estate was the transfer from the Plaintiff to Power Services.

The *Smyth* case dealt primarily with the application of the "earmarking" doctrine.  In *Smyth*, the debtor borrowed $3,700.00 from his landlord to pay a creditor.  The court stated:

> There is no evidence that he conditioned this loan, any more than the first one, upon the payment of any particular creditor or that he cared who was paid. We believe the arrangement was such that Koplik [the debtor] rather than Childs designated the creditor to be paid and controlled the application of the loan which it secured from its landlord.

*Smyth* at 42.  Again the court stated: "[W]e think that the loans from by Childs to Koplik were unconditional, that the proceeds became a part of the bankrupt's free assets[.]" *Id*. at 43.

---

[2]  While this case involved the application of 11 U.S.C. § 550, the principle involved is equally applicable to a preference action.

Had the undisputed facts demonstrated that this transaction was a loan by Power Services to ET Holdings and the case gone to trial, Orrick would have most likely prevailed on the earmarking defense in that ET Holdings never had control of the funds and there was no attendant diminution of the estate by the substitution of one creditor for another. *In re Hartley*, 825 F.2d 1067, 1070-1071 (CA6 1987). This was a direct payment by Power Services to Orrick. The funds paid by Power Services "could never have become generally available to all of the creditors." *Smyth* at 42. Under no possible interpretation of the undisputed facts could the instant situation be described as one where "a new creditor provides funds to the debtor with no specific requirement as their use[,]" thus making the funds part of the estate. *In re Flanagan*, 503 F.3d 171, 185 (CA2 2007).

*Schick,* the second case relied upon by the Plaintiff, involved a faithless escrow agent who commingled his *cestui's* funds with his own. The escrow account was taken to a zero balance. The funds were ultimately repaid from funds received from various sources. The court stated that the trustee's burden was to show that the debtor had legal title to the account and that the account consisted of commingled funds. Under applicable New York law, the beneficiary of the trust must identify or trace his funds to retain priority over unsecured creditors. Here the trust beneficiary could not identify that any funds were delivered to Schick to be held in trust. Another segment of the trustee's case involved payments wired directly to the trust beneficiary by third parties. Here, the court relied on *Smyth* for the proposition that "third party funds were property of the debtor because the debtor was able [to] control their application through its designation of how the funds would be used . . . ." *Schick* at 346. The court summed matters up:

> Under *Smyth*, therefore, a payment made by a third party to a creditor of the debtor will amount to a transfer of the debtor's property "when the payment represents a loan by the third party to the debtor and the debtor, rather than the lender, designates the creditor to be paid and controls the application of the loan." 5 Lawrence P. King, *et al.*, Collier on Bankruptcy ¶ 547.03[2], at 547-24 (rev. 15th ed. 1999) (citing *Smyth* ); *accord In re Smith*, 966 F.2d 1527, 1533 (7th Cir.), *cert. dismissed*, 506 U.S. 1030, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992). Conversely, when the third party lends money to the debtor for the purpose of paying a specific creditor that the lender designates, the funds are "earmarked," do not become property of the debtor and cannot be recovered by the trustee. *See In re Kelton Motors, Inc.*, 97 F.3d at 25; *In re Smith*, 966 F.2d at 1533.

*Schick* at 346.  The problem with the application of this line of authority to this case is that the undisputed facts are to the contrary.  Power Services was a creditor of ET Holdings.  It was at all times in control of the funds paid by it directly to Orrick.  As with the case of *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (CA2 1938), ET Holdings never had control over the funds. The funds paid by a creditor of the Plaintiff, Power Services, to Orrick, were never property of the estate. The parties in control of the Plaintiff could not have their cake by selling Power Services and eat it as well by transforming the slam-dunk insider[3] preference action against Power Services into a preference action against Orrick.

Against this background, as well as the allegations set forth in the Sanctions Motion and the subsequent filings, testimony and argument of the parties related thereto, the court concludes that its previous observation that the Plaintiff concocted "a very different scenario than that reflected in these records" was justified.  Orrick successfully showed this court that the action should not have been brought in the first instance.  ET Holdings and Whiteford chose to initiate a baseless action, possibly with the goal of forcing settlement resulting in a quick return.  Justified or not, when Orrick refused to be bullied,[4] ET Holdings and Whiteford switched legal theories at the eleventh hour by misguided reliance upon the *Smyth* and *Schick* cases.  Examples of Orrick's attempts to stop the litigation and the Plaintiff and Whiteford's malconduct are legion.  ET Holdings and Whiteford knowingly filed the action that was not warranted by existing law, made false statements of fact and failed to include relevant facts in the complaint and amended complaint.  As reflected above, they improperly and without justification shifted legal theories. They were not candid and forthcoming with this court by failing to acknowledge ET Power's release of Power Services – a transaction buried in the thousands of docket entries in the jointly-administered case file.  They played fast and loose with the federal rules by not cooperating in discovery causing unnecessary fees and costs.

---

[3] Under 11 U.S.C. § 547(b)(4)(B), a plaintiff in a preference action against an insider can recover transfers made within a year of the filing of the petition.

[4] While not pertinent to the decision in this dispute, given the potential dividends to holders of unsecured claims one might question the business judgment in pursuing this costly action considering the potential net benefit to the estate.  *See* Dkt. No. 164, pp. 37-41.

The court has considered several factors in fixing the amount of sanctions imposed.  The court believes that the same standard that is used for fixing sanctions for discovery abuses is appropriate in this situation.  In *Wilson v. Volkswagen of America, Inc*., 561 F.2d 494, 503-506 (CA4 1977), the Fourth Circuit recognized the competing interests involved and created the following four-part standard: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary, which necessarily includes an inquiry into the materiality of the evidence that was not produced; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

In finding bad faith in this situation, the court has considered the length and severity of the derelictions highlighted by Orrick.  The court mentions some of these.  Had this case been undertaken on a contingent fee basis, the court is morally certain that Whiteford would have abandoned it early on.  The withholding of the agreement with Power Services described in Schedule G is troublesome in that the court wonders how it could be scheduled in a pleading under oath yet the agreement would never see daylight.  The complaint seems to have been filed as a knee-jerk reaction, and should have been abandoned early when senior counsel became familiar with the case.

The prejudice caused Orrick is obvious.  The court has no reason to doubt that Orrick, as its counsel states, devoted several hundred thousand dollars of billable time to defend this action.  The court is not inclined to allow Orrick the same compensation as might be awarded a third party represented by Orrick.  The court also acknowledges some "overkill" on the part of Orrick in its defense of this case.  There is a need for deterrence of the action sanctioned here.  First, there is the need for stemming abusive preference litigation where creditors are faced with a choice of settling or spending more in defending the action than the amount sought.  Next, there is the situation presented here where considering the size of the likely distribution to creditors, would the costs incurred ever justify the action?  Finally, there is no less drastic action that can be imposed upon Whiteford.  Orrick is entitled to be reimbursed for a portion of its costs in defending this action.

In fixing the amount allowed Orrick, the court declines to accept Orrick's invitation contained in its proposed order (Dkt. No. 93-2) to request an analysis of its fees and costs in defending this adversary proceeding.  There has been far too much time spent on this case

-6-

already.  This court has been living with this case for nearly four years and considers itself an expert on the amount of time and effort that should have been devoted to this case.  See *In re TMT Trailer Ferry, Inc*., 577 F.2d 1296, 1304 (CA5 1978); *Campbell v. Green*, 112 F.2d 143, 144-145 (CA5 1940); *In re Morgan*, 48 B.R. 148 (BC Md. 1985).

For all of these reasons, the court will impose sanctions upon the Plaintiff and Whiteford. An appropriate order will be entered.

Copies to:

Plaintiff
Defendant
Plaintiff's Counsel
Defendant's Counsel

**End of Memorandum of Decision**